UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORETTA J. DAVIS,<br><br>Plaintiff,<br><br>v.<br><br>DANNEL MALLOY, ET AL.<br><br>Defendant. | No. 3:17-cv-1740 (MPS) |

**INITIAL REVIEW ORDER**

On October 16, 2017, the plaintiff, Loretta J. Davis, brought a civil action *pro se* under 42 U.S.C. § 1983 against a litany of defendants for violating her rights under the Fourteenth and First Amendments to the United States Constitution, for intentional infliction of emotional distress, and negligent supervision/failure to supervise. (ECF No. 1; ECF No. 3). On February 5, 2018, the Court dismissed the complaint, finding that the plaintiff's federal law claims failed as a matter of law and declining to exercise jurisdiction over her remaining intentional infliction of emotional distress claim. (ECF No. 11). The Court permitted the plaintiff to submit a motion to reopen along with an amended complaint that (1) does not join multiple, unrelated claims; and (2) sets out cognizable federal-law claims. (*Id.*) Further, the Court notified the plaintiff that failure to comply with these instructions would result in dismissal of the case with prejudice.

On March 6, 2018, the plaintiff filed a motion to reopen and file an amended complaint. (ECF No. 18). For the reasons set forth below, the plaintiff's motion to reopen the case is denied and the amended complaint is dismissed with prejudice.

**I.  Legal Standard**

1

The plaintiff was granted leave to proceed in forma pauperis. (ECF No. 8). As such, "the court shall dismiss the case at any time" if the action "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

The plaintiff is *pro se*, so I construe her pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and quotation marks omitted). Nevertheless, even a *pro se* plaintiff must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. Discussion

### a. Fed. R. Civ. P. 20(a)(2)

In the Court's Initial Review Order, dated February 5, 2018, the Court explained that the plaintiff's complaint set out a series of unrelated claims and therefore failed to comply with Rule 20. (ECF No. 11 at 2-4). The Court informed the plaintiff that if she chose to file an amended complaint, such complaint should "not join multiple, unrelated claims." (ECF No. 11). However, the plaintiff's amended complaint still fails to comply with Rule 20.

Rule 20 permits joinder of claims against multiple defendants only if two criteria are satisfied: (1) the claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." *Melvin v. Connecticut*, No. 3:16-CV-537 (RNC), 2016 WL 3264155, at *2 (D. Conn. June 14, 2016) (quoting *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted)). The Second Circuit has noted in the Rule 13 context that whether separate claims arise out of "the same 'transaction or occurrence'" turns upon "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

Like the plaintiff's original complaint, her amended complaint sets forth a number of "separate and unrelated [allegations], with [various events] occurring at different times for different reasons with regard to different agents." *Nassau Cty. Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151, 1154 (2d Cir. 1974) (holding plaintiffs failed to comport with Rule 20). The plaintiff begins by explaining that her five-week old daughter passed away from sudden infant death syndrome at Yale New Haven Hospital on May 4, 1980. (ECF No. 18-1 at 7). The next several pages of the amended complaint allege that various individuals mishandled the remains of her child, conducted an autopsy without her consent, failed to provide her with information and records about the burial, and removed her child's body from the grave after interment. (*Id*. at 5-14).

The plaintiff then sets out a series of allegations related to her work history and participation in benefits programs. She asserts that in the late 1990s, a Department of Labor (DOL) grant for retraining was taken away by the Regional Work Force Development Board in New Haven. (*Id*. at 15). She alleges that she was "denied a right to receive and participate in a federally funded educational program because of [her] race and [her] age," and that when she filed complaints, she faced retaliation from DOL representatives and social workers. (*Ibid*). The plaintiff then states that she became ill and lost her job in 1999. (*Id*. at 16). She contends that over the next 15 years, a series of Department of Social Service (DSS) representatives denied her benefits, improperly counted earnings against her due to a computer glitch, failed to comply with a 2003 fair hearing directive, and then improperly terminated her food stamp/SNAP benefits in 2015. (*Id*. at 16-17). She again alleges that she was "treated differently than those similar" and was denied the "right to participate in federally funded program." (*Id*. at 17).

Finally, the plaintiff sets out a series of allegations against various health centers. These include claims of "medical malpractice/negligence and intentional infliction of emotional distress" against various institutions. (*Ibid*). The plaintiff asserts that in her interactions with these health care providers, she was treated "differently than others similarly situated because of her race and age." (*Id*. at 18). She also alleges that she was given experimental medications during two pregnancies in 1982 and 1994 which led to very serious medical conditions, including bone abnormalities, breathing difficulties, and heart problems, in her and her children. (*Id*. at 18-19). The plaintiff continues with allegations against health care providers and doctors for conduct related to a medical procedure for her lungs, (*Id*. at 19-20), yearly exams, (*Id*. at 21), a hand and thumb injury, (*Id*. at 21-24), and asthma, (*Id*. at 23). She states that she filed a complaint with the State of Connecticut Health Department and that it denied her an opportunity

to challenge the "discriminatory health care" provided to her "because of [her] race and age." (*Id*. at 20-21). In addition, plaintiff alleges that "inaccurate medical and psychiatric history" will "always interfere with [her] right to be free from discrimination." (*Id.* at 25).

This wide range of allegations—spanning nearly four decades, many defendants, and many different types of claims—alone provides sufficient reason for the Court to dismiss the plaintiff's complaint. *Melvin v. Connecticut*, 16 Civ. 537 (RNC), 2016 WL 3264155, *2 (D. Conn. Jun. 14, 2016) (dismissing complaint for failure to comply with Rule 20). There are other basic flaws in the complaint, however, which also justify its dismissal. These are discussed below.

  b. **Eleventh Amendment**

The Eleventh Amendment bars claims against state agencies and all official capacity claims for money damages against state officials. [1] *Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (holding that a suit against a state agency or department constitutes a suit against a state for Eleventh Amendment purposes). Moreover, Section 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 342

---

[1] It is unclear whether the plaintiff's amended complaint includes allegations against these defendants. In response to this Court's Initial Review Order, (ECF No. 11), the plaintiff filed an amended complaint in which she removed state agencies and state officials from the caption of the case and from the "Request for Relief," (ECF No. 18-1 at 1, 28). However, the plaintiff continues to list them in the "Parties" section of the amended complaint, (*Id*. at 1-5), and refers to them throughout the document. She also includes several paragraphs in her amended complaint about waiver of Eleventh Amendment immunity. (*Id*. at 14-15). Because the plaintiff is *pro se*, the Court resolves this conflict by construing her amended complaint liberally to include all possible claims, including those against state agencies and state officials.

(1979). As such, the plaintiff's Section 1983 claims for money damages against state agencies and state officials in their official capacity are barred by the Eleventh Amendment.

In her amended complaint, the plaintiff says a "state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suits in Federal Court for a violation of Title VI of the Civil Rights Act of 1964 (discrimination based on race and ethnicity), the Age Discrimination in Federally Assisted Programs Act of 1975, Title IX of the Education Amendments of 1972 (gender discrimination in education), and Section 504 of the Rehabilitation Act of 1974 (discrimination based on disability)." (ECF No. 18-1 at 14). She further states that "[i]f sovereign immunity is waived under statutes enacted as part of the SPENDING POWER a private Plaintiff may sue the state or state agency as a named defendant and may recover damages to the extent that they are allowed by the underlying statute." (*Id.* at 14-15).

The plaintiff is correct that the Eleventh Amendment does not bar all claims for money damages under Title VI of the Civil Rights Act of 1964, the Age Discrimination Act of 1975, or Section 504 of the Rehabilitation Act of 1973. 42 U.S.C. § 2000d-7(a)(1) and (a)(2); *see also Lane v. Pena*, 518 U.S. 187, 200 (1996) (describing 42 U.S.C. § 2000d-7 as "an unambiguous waiver of the States' Eleventh Amendment immunity"). Consistent with the Court's obligation to construe the plaintiff's complaint liberally, I will determine whether the plaintiff has set out any cognizable claims under these statutes in the subsequent sections of this order.

  c. **Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.***

Title VI of the Civil Rights Act of 1964 provides that no person shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination" on the basis of race, color, or national origin "under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

6

In support of her claims, the plaintiff states that "Federal Programs including cash and burial assistance, medical insurance, food stamps/SNAP and housing are implemented through grants to the states." (ECF No. 18-1 at 14). She also alleges discriminatory treatment on several occasions: "(I) was treated differently from those similar and denied a right to receive and participate in a federally funded educational program [DOL retraining grant] because of my race and my age," (*Id*. at 15); "Again Plaintiff was treated differently than those similar and denied Plaintiff's right to participate in federally funded program food stamp/SNAP," (*Id*. at 17); "Physicians violated Plaintiffs' Rights, Trust and "HIPPOCRATIC OATH TO DO NO HARM" by providing discriminatory health care; treating Plaintiff differently than others similarly situated because of my race and age" (*Id*. at 17-18); "State of Connecticut Public Health Department treated Plaintiff differently than those similar, denied Plaintiff Loretta J. Davis a right to participate in the complaint process against medical professionals that violated Plaintiff's Basic Human Rights to man and provided discriminatory health care to Plaintiff because of (My) race and age," (*Id*. at 21).

"Title VI prohibits *intentional* violations of the statute." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664 (2d Cir. 2012) (emphasis added). To make out a claim under Title VI, "the plaintiff must show, *inter alia,* that the defendant discriminated against [her] on the basis of race," "that that discrimination was intentional," and "that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions." *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (internal quotation marks omitted). The allegations of discriminatory treatment detailed above are conclusory and the plaintiff does not set forth any facts or events that support them. *Leftridge v. Support Enf't Servs*. , 2013 WL 1947174, at *5 (D. Conn. May 3, 2013) ("[C]onclusory and vague assertions that defendants conspired to discriminate against him or

intentionally discriminated against him . . . do not withstand the standard set forth by *Iqbal* or *Twombly* for a plausible Title VI claim and should be dismissed."). As such, the plaintiff does not set forth a cognizable claim under Title VI of the Civil Rights Act, and Title VI abrogation of the Eleventh Amendment is not applicable.

### d. Age Discrimination Act of 1975, 42 U.S.C. § 6101 *et seq.*

The Age Discrimination Act provides that no person "shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102. "Prior to filing suit under this act, however, a plaintiff must exhaust the administrative remedies set forth in 42 U.S.C. § 6104 and 45 C.F.R. § 90.50." *Harris v. New York State Educ. Dep't*, 419 F. Supp. 2d 530, 535 (S.D.N.Y. 2006). The plaintiff's amended complaint does not indicate compliance with these procedures. As such, she does not set forth a cognizable claim under the Age Discrimination Act, and abrogation of the Eleventh Amendment is not applicable. In any event, she does not plead any facts that suggest that anyone discriminated against her on the basis of her age.

### e. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). In order to establish a *prima facie* violation of this Act, the plaintiff "must demonstrate (1) that she is a qualified individual with a disability; (2) that the defendants are subject to [the Act]; and (3) that she was denied the opportunity to participate in or benefit from defendants services, programs, or activities, or [was]

otherwise discriminated against by defendants, by reason of [her] disabilit[y]." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir.), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004) (internal quotation marks and citation omitted).

Assuming, *arguendo*, that the plaintiff meets the requirements for a qualified individual with a disability and that some of the defendants are subject to the Act, she does not allege that she was denied the opportunity to participate in or benefit from a program *by reason of a disability*. The plaintiff does allege that she became ill and lost her job in 1999, (ECF No. 18-1 at 16), and that a series of Department of Social Service (DSS) representatives denied her benefits, counted earnings against her due to a computer glitch, and improperly terminated her food stamp benefits (*Id*. at 16-17). Although she alleges that she was "treated differently than those similar" and was denied the "right to participate in federally funded program" due to these actions, (*Id*. at 17), she nowhere alleges that it was because of a disability. Similarly, in each of the other instances in which the plaintiff alleges she was denied the right to participate in a federally funded program, she does not allege any facts to support discrimination on the basis of disability. (*See id*. at 15-17). As such, the plaintiff does not set forth a cognizable claim under Section 504 of the Rehabilitation Act, and abrogation of the Eleventh Amendment is not applicable.

**f. 42 U.S.C. § 1983**

The plaintiff asserts that the defendants violated her constitutional rights in two ways: (1) by discriminating against her on the basis of her race in violation of the Equal Protection Clause of the Fourteenth Amendment (*Id*. at 25-26); and (2) by retaliating against her for "exercising free speech rights to oppose discrimination" in violation of the First Amendment (*Id.* at 26). Neither of these counts, however, contains sufficient factual support to set out a cognizable claim.

I begin with the plaintiff's equal protection claim. To establish an equal protection violation under § 1983, a plaintiff must establish more than "the disparate impact of a facially neutral policy"—she must demonstrate "[p]roof of racially discriminatory intent or purpose. . . ." *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012). Although the plaintiff alleges a litany of harmful conduct committed by various actors, she does not present any factual allegations suggesting that these actors were motivated by a discriminatory intent or purpose. Her allegations in this vein state that the defendants "acted intentionally maliciously and with a discriminatory purpose," (ECF No. 18-1 at 26), and that defendants treated her differently on the basis of race, (*Id*. at 17-18, 20-21, 25). These conclusory statements are not enough to establish discriminatory intent. *Ashcroft* 556 U.S. at 678. As a result, her equal protection claim fails.

The plaintiff's retaliation claim under the First Amendment suffers from a similar problem. To set out a viable First Amendment retaliation claim, a plaintiff who is a private citizen must prove: "(1) [she] has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [her] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [her] First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). In order to meet the chilling element of this standard, a plaintiff must demonstrate that her First Amendment rights were "actually chilled"—i.e. that there was "specific present objective harm or a threat of specific future harm." *Id.* (internal quotation marks omitted). The plaintiff's claim does not satisfy the third part of this standard. Her retaliation claim rests on her supposition that the defendants retaliated against her for "exercising free speech rights to oppose discrimination." (ECF No. 18-1 at 26). Yet she only alleges a single instance of such retaliation in her complaint—a statement by a worker at the Department of Social Services ("DSS") warning the plaintiff that she would lose her food stamp

benefits for her family if she "resisted" the DSS's determination that she was not eligible for a retraining grant. (*Id.* at 15). The plaintiff notes in her complaint, however, that she nonetheless went on to file a complaint with the Department of Labor and the Directorate of Civil Rights. (*Id.*). Given that the alleged retaliatory action of the DSS did not cause the plaintiff to change her behavior, her First Amendment rights were not actually chilled. *See Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.). As such, the plaintiff's First Amendment claim fails as a matter of law.

Thus, the plaintiff fails to state a claim under 42 U.S.C. § 1983.

### g. Intentional Infliction of Emotional Distress

The plaintiff's sole remaining count is her state tort claim for intentional infliction of emotional distress. The only basis for the Court's jurisdiction over this claim, however, stems from its supplemental jurisdiction under 28 U.S.C. § 1367.[2] Once a district court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over the remaining claims. 28 U.S.C. § 1367(c)(3). In determining whether to exercise this discretion, a district court must consider "the traditional 'values of judicial economy, convenience, fairness, and comity. . . ." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)). These factors favor declining jurisdiction when all federal claims have been dismissed prior to trial. *See Cohill*, 484 U.S. at 350 n. 7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent

---

[2] The plaintiff does not allege any alternative basis for the Court's jurisdiction over the state law claim other than 28 U.S.C. § 1367, and the allegations of the complaint suggest that the plaintiff and most of the individual defendants are citizens of Connecticut, which means that the Court would not have diversity jurisdiction. (*See* ECF No. 18-1 at 1-5).

11

jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). The circumstances underlying the plaintiff's intentional infliction of emotional distress claim do not suggest a contrary path. Since the plaintiff's "federal-law claims were eliminated . . . prior to the investment of significant judicial resources," I decline to exercise jurisdiction over the plaintiff's intentional infliction of emotional distress claim. *Kolari*, 455 F.3d at 123.

### h. Warning Regarding Filing Injunction

The plaintiff filed a complaint on September 15, 2016 containing allegations about the burial of her child in 1980 and the subsequent mishandling of her child's remains. *Davis et al v. Malloy et al*, 3:16-cv-1563 (AWT), Dkt No. 1. The complaint was dismissed, *id.*, Dkt No. 11, as was the appeal, *id.*, Dkt No. 16. Then, as discussed above, the plaintiff filed a complaint with similar allegations in the present case. (ECF No. 1). After her complaint was dismissed without prejudice, (ECF No. 11), the plaintiff filed the amended complaint at issue here, (ECF No. 18), which again contains allegations related to the burial and mishandling of her child's remains. The Second Circuit authorizes a district court to "impose sanctions, including restrictions on future access to the judicial system" if "a litigant has a history of filing vexatious, harassing or duplicative lawsuits." *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) (internal quotation marks and citations omitted). As such, if the plaintiff files another complaint containing allegations the court has already ruled on three times—allegations concerning the burial and mishandling of her child's remains—the Court will require the plaintiff to show cause as to why a filing injunction should not issue.

## III. Conclusion

For the reasons set forth above, the plaintiff's amended complaint is hereby dismissed with prejudice, and her motion to reopen is denied.

It is so ordered.

Dated at Hartford, Connecticut this 5th day of November, 2018.

   /s/      MICHAEL P. SHEA

Michael P. Shea, U.S.D.J.